CALHOUN & LAWRENCE, LLP
ATTORNEYS AT LAW
81 MAIN STREET
SUITE 504
WHITE PLAINS, NEW YORK 10601

CLINTON W. CALHOUN, III*
KERRY A. LAWRENCE**

REBECCA R. BROWN**

*ALSO ADMITTED IN VA & DC
**ALSO ADMITTED IN CT

(914) 946-5900

FAX (914) 946-5906

May 12, 2021

**MEMO ENDORSED**

**BY ECF**
Honorable Kenneth M. Karas
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

Re: **United States v. Anthony Marraccini**
19 Cr. 42 (KMK)

Dear Judge Karas:

I am writing in reply to the Government's letter dated May 6, 2021 opposing my application to terminate Anthony Marraccini's supervised release as of May 9, 2021.

Mr. Marraccini did not intend to ask the Court to provide relief unauthorized by the law. When I first discussed this issue with Mr. Marraccini's supervising probation officer she did not indicate that my request was unauthorized by law, and instead told me that once he had completed half of his one year term she would support his application for early termination. When I sought the Government's consent to the relief I was seeking I was told they opposed but no reason for the opposition was given.

The statutes and cases cited by the Government appear to provide that the court "may" terminate supervised release after a defendant completes one year, but does not specifically prohibit termination in less than one year. Moreover, the cases cited by the government involve cases where the defendants were ordered to serve more than one year of supervised. In these cases courts held that these defendants had to serve at least a year of supervised release before having their terms shortened. It is unclear whether the statutes cited by the Government even apply to terms of supervised release that were only a year at the onset.

Mr. Marraccini has exhibited exemplary behavior since being sentenced. Our previous letter outlines his efforts while in custoday. It is also an unnecessary burden on the Probation Department in the difficult times we are all facing during the pandemic to have another

supervisee that does not require any supervision.

With regard to the lack of evidence or details about Mr. Marraccini's job prospect attached is an email from his prospective employer that notes that he can not employ Mr. Marraccini while on federal supervised release and that the job opportunity may not exist after November when Mr. Marraccini would otherwise be released from supervision.

The Probation Department's website has a link to assist supervisees in seeking a New York State certificate of relief from civil disabilities. http://probation.nysd.uscourts.gov/certificate-of-relief-from-disabilities. We never suggested that this Court could or should issue one. It appears that Mr. Marraccini has a viable job opportunity irrespective of whether he obtains the certificate or not.

With regard to the alleged failure to cooperate with the Probation Department and the IRS please see the attached letter from Mr. Marraccini's counsel who is assisting him in resolving his outstanding tax obligation. The letter demonstrates that counsel has in good faith tried to reach a resolution with the IRS but to date has been unable to do so. Mr. Marraccini should not be faulted for following the advice of his attorney about how to proceed with his tax issues. The Probation Department has not raised any concerns about Mr. Marraccini's outstanding tax issue.

Based on the foregoing it is respectfully requested that the Court terminate Mr. Marraccini's supervised release on May 9, 2021.

Thank you for the Court's consideration of this reply letter request.

Respectfully submitted,

Kerry A. Lawrence

KAL/kvm

cc: AUSAs Perry Carbone and James McMahon (via ECF and e-mail)

Under 18 U.S.C. § 3583(e)(1), a "court may," after considering certain factors, "terminate a term of supervised release and discharge the defendant released at any time *after the expiration of one year of supervised release*," *id.* (emphasis added). The most natural reading of this statutory language, and the view adopted by courts in this Circuit, is that a defendant must serve at least one year of supervised release. *See United States v. Erskine*, No. 05-CR-1234, 2021 WL 861270, at *1 n.1 (S.D.N.Y. Mar. 8, 2021) (indicating that a defendant was eligible for consideration of a reduction or termination of his supervised release because he had "served more than one year of his term"); *United States v. Andujar-Ortiz*, ---F. Supp. 3d---, 2020 WL 7213527, at *2 (W.D.N.Y. Dec. 8, 2020) (observing that, "pursuant to the express terms of § 3583(e)(1), at least one year of supervised release must have been served"); *United States v. Werber*, No. 90-CR-364, 1995 WL 506981, at *1 (S.D.N.Y. Aug. 25, 1995) (holding that because the defendant "ha[d] not served one year of supervised release, . . . the relief provided for in 18 U.S.C. § 3583(e)(1) . . . appears to be unavailable under the terms of the statute"). Although Defendant suggests his case is distinguishable because it involves a term of only one year, he cites no statutory or decisional authority to support such a distinction, nor has the Court located any. His argument that § 3583(e)(1) and the cases interpreting this provision may not "even apply to terms of supervised release that were only a year at the onset" is equally unpersuasive. Again, Defendant floats this argument in conclusory fashion without locating a single statute or case that might substantiate such a position. The Court will not depart from the clear statutory language of § 3583(e)(1) and the case law interpreting this provision on the basis of conjecture. Because Defendant has not yet served one year of supervised release, the Court may not grant the requested relief, and thus, the pending Application (Dkt. No. 21) is denied.

SO ORDERED

KENNETH M. KARAS U.S.D.J.

May 19, 2021

To Whom it May concern:

Please see this letter as a note of opportunity and relevant cause to have the ability to speak with Anthony Marraccini about possible employment. His background as a Police Chief and community leader lends itself to many opportunities that we would like to discuss regarding AllStar Security. His unparalleled success in the investigative and security world as Chief of a premier dept lends itself to be a very valuable commodity. With him having the ability to gain a Private Investigator/ Security license would be paramount to have these conversations. At this time it would be an impossibility to even consider hiring Anthony while under supervised release and without proper licensing. As the pandemic is ending, we are finding increased need for qualified applicants like Anthony which is needed immediately but may not be here in November.

Thank you for your time

*****Please note our new address*****

Mark Selden
C.E.O.
AllStar Security
10 Times Square 17th Fl. (1441 Broadway)
New York, NY 10018
Phone: 212.997.7676
Fax: 212.997.7387

**RICHARD H. CHAMPION**
Attorney at Law
251 Westwood Avenue
Long Branch, NJ 07740
Telephone: (732) 222-3328
Facsimile: (732) 222-3358

11 May 2021

Kerry Lawrence
Calhoun & Lawrence
81 Main Street, Suite 504
White Plains, NY 10601

          Re: Anthony Marraccini

Dear Mr. Lawrence:

Mr. Marraccini has forwarded to me a copy of the 6 May letter of Messrs. Carbone and McMahon to the Court. While it is indeed true that Mr. Marraccini firmly believes that a penalty of 75% of the evaded tax, together with separately computed interest on that penalty, is excessive, and while it is also true that he maintains that he is entitled to certain additional deductions in the computation of his civil tax liability, the claim that he has been uncooperative merits clarification.

Mr. Marraccini was required by the plea agreement to amend his 2011-2016 individual returns. He did so. Through counsel, he caused to be remitted three payments of $100,000 with the directive that they be applied to the years 2013-2015. In addition, counsel remitted, in January, 2019, a payment of $474,950, which I directed be applied to the remaining balances shown to be due on the return amendments. Contrary to my directive, and in contravention of its procedures, the Service posted the payment to the 2011 tax period. Finally, in April, 2019, I remitted a payment of $124,238 which I calculated to be the interest due on the 2011-2016 amendment liabilities as of the date of remittance. Contrary to my directive, and contrary to its procedures, the Service posted the payment to the 2011 tax period.

In August and September, 2019, the Revenue Agent assigned to examine Mr. Marraccini's amendments assessed the taxes returned by the amendments for 2015 and 2016. While acknowledging that Mr. Marraccini

had paid an amount sufficient to satisfy the assessments, he declined to transfer any portion of the credits improperly lodged in the 2011 tax module. This refusal resulted in the issuance of Notice of Levy for the 2015 year, the improper application of a 2018 overpayment to the 2016 year and ultimately a Notice of Levy for the 2019 year, a liability intended to be covered by the 2018 overpayment. Mr. Marraccini was forced to separately contest each of these improper actions, the last of which resulted in the improper filing of a federal tax lien (later withdrawn) because the Revenue Officer assigned did not work in her Post of Duty during the pandemic and did not read or process the mail that was required to be sent there.

The foregoing did not instill confidence in Mr. Marraccini that he would be treated fairly by the Revenue Agent assigned. Accordingly, I directed the Revenue Agent to close the examination periods as unagreed and to forward the Administrative file to the Appeals Division. The transfer of an unagreed case from Examination to Appeals cannot be read as, or deemed to be, a lack of cooperation. Rather, it is an effort to minimize the consequences of actions/inactions by certain Service personnel who take a distinctly limited view of their abilities and responsibilities.

Should you require further information or clarification in respect of the foregoing, contact me at your convenience.

Sincerely,

Richard H. Champion